Nathanael J. Carter Jr. AN8931
Name and Prisoner/Booking Number

CSP-Sacramento
Place of Confinement

PO Box 290066  B-4-222
Mailing Address

Represa, CA 95671
City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

**FILED**

**Feb 15, 2022**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

Nathanael James Carter Jr. ,
(Full Name of Plaintiff)          Plaintiff,

v.

(1) Corrections Officer D. Murphy,
(Full Name of Defendant)

(2) CSP-Sacramento ,

(3) ~~CDCR~~ CDCR ,

(4) ,
Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. 2:22-cv-291-DMC (PC)
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

☑ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

Jury trial Demanded

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☑ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☐ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).
   ☐ Other: _____.

2. Institution/city where violation occurred: CSP-SAC Represa

Revised 3/15/2016                              1

## B. DEFENDANTS

1. Name of first Defendant: ___D. Murphy___. The first Defendant is employed as: ___Corrections Officer___ at ___CSP-SAC___.
             (Position and Title)                   (Institution)

2. Name of second Defendant: ___CSP-SAC___. The second Defendant is employed as: _____ at _____.
             (Position and Title)                   (Institution)

3. Name of third Defendant: ___CDCR___. The third Defendant is employed as: _____ at _____.
             (Position and Title)                   (Institution)

4. Name of fourth Defendant: _____. The fourth Defendant is employed as: _____ at _____.
             (Position and Title)                   (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner? ☐ Yes ☑ No

2. If yes, how many lawsuits have you filed? _____. Describe the previous lawsuits:

   a. First prior lawsuit:
   1. Parties: _____ v. _____
   2. Court and case number: _____
   3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____

   b. Second prior lawsuit:
   1. Parties: _____ v. _____
   2. Court and case number: _____
   3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____

   c. Third prior lawsuit:
   1. Parties: _____ v. _____
   2. Court and case number: _____
   3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)_____

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

## D. CAUSE OF ACTION

### CLAIM I

1. State the constitutional or other federal civil right that was violated: 8th and 14th Amendment Right

2. **Claim I**. Identify the issue involved. Check **only one**. State additional issues in separate claims.

   - ☐ Basic necessities
   - ☐ Disciplinary proceedings
   - ☑ Excessive force by an officer
   - ☐ Mail
   - ☐ Property
   - ☐ Threat to safety
   - ☐ Access to the court
   - ☐ Exercise of religion
   - ☐ Other: _____
   - ☐ Medical care
   - ☐ Retaliation

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim 1. Describe exactly what each **Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   On October 16th 2020 I was Shot in my head on the left side of my Forehead by Officer D. Murphy. Two Inmates were Fighting Officers Said get on the ground I got on the ground and Officer Murphy Shot me eventhough I was on the ground Following Instructions and not involved in the incident.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

   I Suffered a Concussion pain, Migrains and head aches. I Suffered From Black outs, Dizzy Spells and Forgetfullness I also have a perminent Knot on my head where I was Shot.

5. **Administrative Remedies:**

   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☑ Yes   ☐ No

   b. Did you submit a request for administrative relief on Claim I?   ☑ Yes   ☐ No

   c. Did you appeal your request for relief on Claim I to the highest level?   ☑ Yes   ☐ No

   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

3

## CLAIM II

1. State the constitutional or other federal civil right that was violated: 14th ~~BA~~ Amendment

2. **Claim II.** Identify the issue involved. Check **only one.** State additional issues in separate claims.

   - [ ] Basic necessities
   - [ ] Disciplinary proceedings
   - [x] Excessive force by an officer
   - [ ] Mail
   - [ ] Property
   - [ ] Threat to safety
   - [ ] Access to the court
   - [ ] Exercise of religion
   - [ ] Other: _____
   - [ ] Medical care
   - [ ] Retaliation

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   I was Shot in My Forehead by a Officer ~~the~~ employed at CSP-Sac. i was following State instructions. i was a innocent bystander.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

   I suffered a Concussion, pain, Dizzyness, Black outs, Forgetfullness

5. **Administrative Remedies.**

   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? [x] Yes [ ] No

   b. Did you submit a request for administrative relief on Claim II? [x] Yes [ ] No

   c. Did you appeal your request for relief on Claim II to the highest level? [x] Yes [ ] No

   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

## CLAIM III

1. State the constitutional or other federal civil right that was violated: 8th And 14th AMendMent Right

2. **Claim III.** Identify the issue involved. Check **only one.** State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☒ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   I was shot in my head by a officer employed by C.D.C.R.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

   I suffered a concussion

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Claim III? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Claim III to the highest level? ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

**If you assert more than three Claims, answer the questions listed above for each additional Claim on a separate page.**

## E. REQUEST FOR RELIEF

State the relief you are seeking:   *5,000,000* <sup>oo</sup>

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __1-19-22__
DATE

_Nathanael Carter_
SIGNATURE OF PLAINTIFF

(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

(Signature of attorney, if any)

(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space you may attach more pages, but you are strongly encouraged to limit your complaint to twenty-five pages. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages. Remember, there is no need to attach exhibits to your complaint.

| | | |
|---|---|---|
| CDCR | **INCIDENT REPORT PACKAGE** | **PAGE:** 31 |
| **REPORT NO. IRTR161 - 12** | | **PROCESSED:** 10/29/2020  06:04 |
| | **INCIDENT LOG NUMBER: 000000000013712** | **REQUESTOR:** L. Bales |

## STAFF NARRATIVE

**STAFF NAME:** Cary, M                                              **NARRATIVE TYPE:** Initial Report

**CREATED DATE:** 10/16/2020                                    **CREATED TIME:** 16:45:39

### NARRATIVE

On Friday October 16, 2020, at approximately 0951 hours, while performing my duties as B Yard #4. I heard B-Observation announce "get down" over the B-facility Public address system (PA). I immediately scanned the yard to where my attention was brought to B-facility Chapel. Where I could see two inmates later identified by their state issued identification as inmates LOONEY (BC8292 FB3-209L) and REDMAN (J82513 FB3-110U) striking each other in the face and body with their fists. Officer D. Ceja; Officer R. Masterson and myself responded together to the area of the incident. As I made my way up the hard track towards the incident, I heard the sound of a 40mm direct impact launcher being fired. Due to the fact my focus was on the fighting inmates, I could not identify which Central Tower officer fired the round, their intended target or the impact of the round. The round had a somewhat of a positive effect as both inmates separated and began to get down on the ground. As we got close to the scene of the incident, REDMAN got back up and advanced towards LOONEY. I gave both inmates a direct order to "get down" to which they ignored, I could see LOONEY now standing swing his right fist striking REDMAN in the head. At this time I heard the sound of another 40mm direct impact launcher being fired. Again due to the fact my focus was on the fighting inmates, I could not identify which Central Tower officer fired the round, their intended target or the impact of the round. This had a positive effect as both inmates separated and got down on the ground. Officer Masterson, Officer Ceja and myself formed a skirmish line as responding staff arrived. Once sufficient staff was on scene, cover contact teams were established. Officer Masterson gave LOONEY a direct order to walk back towards the skirmish line, to which he complied with. Officer Masterson placed hand restraints on LOONEY and performed a clothed body search on him, having negative results for contraband. Officer Masterson then escorted LOONEY to B-Facility Pedestrian Sally Port. Sgt.W.Sampley directed the skirmish line to move forward, due to the fact of the amount of inmates in the area of the incident. Officer Ceja and I were directed to place REDMAN in hand restraints. I provided coverage for Officer Ceja as he placed hand restraints on REDMAN. Once REDMAN was secured in hand restraints, Officer Ceja performed a clothed body search on him. Having negative results for any contraband, Officer Ceja and myself escorted REDMAN to B-Facility Pedestrian Sally Port. Once in the Sally Port medical staff conducted a medical evaluation on REDMAN and documented their findings on a CDCR 7219 medical evaluation form. We escorted REDMAN to holding cell #10, where I performed a visual search of it. Having negative results for any contraband, secured REDMAN inside the holding cell. Officer Ceja performed an unclothed body search for contraband which yielded negative results. This concludes my involvement in this incident.

M. Cary                                                                                    **DATE:** 10/16/2020

STAFF SIGNATURE

                         **BADGE #:**                                    **PERNR:**

            **NARRATIVE REVIEWED:** Yes                       **REVIEWED BY STAFF:** Sampley, \
                  **REVIEWED DATE:** 10/16/2020                **REVIEWED TIME:** 16:47:08

CDCR
**INCIDENT REPORT PACKAGE**
PAGE: 32
**REPORT NO. IRTR161 - 12**
PROCESSED: 10/29/2020  06:04
**INCIDENT LOG NUMBER: 000000000013712**
REQUESTOR: L. Bales

## STAFF NARRATIVE

| | |
|---|---|
| **STAFF NAME:** Ceja, i | **NARRATIVE TYPE:** Initial Report |
| **CREATED DATE:** 10/16/2020 | **CREATED TIME:** 15:44:45 |

### NARRATIVE

On Friday, October 16, 2020, at approximately 0951 hours, while performing my duties as B Yard 1 Officer, I was observing the yard from in front of the canteen area when I heard via the institutional radio, "We have a fight in front of the chapel." I immediately responded to the hard track facing the chapel and formed a skirmish line. I observed two inmates striking each other in the head and upper torso with their fist. The involved inmates were later identified by their state issued identification cards as inmates LOONEY (BC8292) and REDMAN (J82513). Responding staff and I gave the direct order to get down. Both inmates separated from one another laid face down on the ground in the prone position. Both inmates were no longer fighting. The skirmish line moved forward and I placed REDMAN into mechanical restraints and conducted a clothed body search for contraband, with negative results. Medical staff conducted a medical evaluation 7219 on REDMAN for any injuries, he was cleared by medical. I escorted REDMAN to the B pedestrian sally port holding cell #10. Before placing REDMAN into the cell I searched the cell for contraband, with negative results. I conducted an unclothed body search for contraband, with negative results. This ends my involvement in this incident.

| | |
|---|---|
| D. Ceja | **DATE:** 10/16/2020 |
| STAFF SIGNATURE | |
| | **PERNR:** |
| **BADGE #:** | |
| **NARRATIVE REVIEWED:** Yes | **REVIEWED BY STAFF:** Sampley, |
| **REVIEWED DATE:** 10/16/2020 | **REVIEWED TIME:** 15:46:33 |

| | |
|---|---|
| **STAFF NAME:** Masterson, R | **NARRATIVE TYPE:** Initial Report |
| **CREATED DATE:** 10/16/2020 | **CREATED TIME:** 16:38:59 |

### NARRATIVE

On Friday October 16, 2020, at approximately 0951 hours, while conducting my assigned duties as B Yard Officer #2, I observed two inmates (identified by their state issue identification cards as inmates LOONEY BC-8292 and REDMAN J-82513) fighting on the cement pad in front of the B Chapel, striking each other in the head and upper torso area with their fists. As I responded to the area of the incident I heard one 40mm 4557 exact impact round fired from the B Observation Tower having no effect however; due to my position and amount of inmate movement in the area, I was unable to identify the Officer who fired the round or where the round struck. As responding staff and myself approached the incident we formed a skirmish line a safe distance away from the incident. As additional staff arrived I observed inmate REDMAN attempt to get up and reengage in the fight with LOONEY. I then heard another 40mm 4557 round fired from the B Observation Tower having the desired effect however; due to my position and focus on the inmates I was unable to identify the Officer who fired the round or where the round struck. LOONEY and REDMAN ceased fighting and got down in a prone position and then Cover/Contact teams were established. When safe to do so I placed handcuffs on LOONEY and performed a clothed body search of him with no findings for contraband. Due to the amount of inmates in the area LOONEY and REDMAN were removed from the incident scene and I escorted LOONEY to the B Pedestrian Sally Port. I conducted a visual search of holding cell #4 with no findings for contraband and then secured LOONEY into the holding cell. When secured I conducted an unclothed body search of LOONEY with no findings for contraband. Medical staff performed a medical evaluation of LOONEY and when completed I offered LOONEY clean clothing to which he refused. This concluded my involvement with this incident.

| | |
|---|---|
| R. Masterson | **DATE:** 10/16/2020 |
| STAFF SIGNATURE | |
| | **PERNR:** |
| **BADGE #:** | |
| **NARRATIVE REVIEWED:** Yes | **REVIEWED BY STAFF:** Sampley, V |
| **REVIEWED DATE:** 10/16/2020 | **REVIEWED TIME:** 16:42:55 |

**CDCR**

**INCIDENT REPORT PACKAGE**

**PAGE:** 25

**REPORT NO. IRTR161 - 12**

**PROCESSED:** 10/29/2020  06:04

**INCIDENT LOG NUMBER: 000000000013712**

**REQUESTOR:** L. Bales

## STAFF NARRATIVE

| | |
|---|---|
| **STAFF NAME:** Haynie, R | **NARRATIVE TYPE:** Initial Report |
| **CREATED DATE:** 10/16/2020 | **CREATED TIME:** 11:39:45 |

### NARRATIVE

On Friday, October 16, 2020, at approximately 0951 hours, inmates LOONEY (BC8292, FB3-209L) and REDMAN (J82513, FB3-110U) were in violation of California Code of Regulations (CCR) Title 15 Section 3005(d)(1), Fighting resulting in the Use of Force (40MM X2).

Specifically, LOONEY and REDMAN were observed striking each other in the upper body and facial areas with their fists on the concrete pad in front of the Chapel on the B Facility Main Yard. B Facility Observation Officer Murphy utilized his state issued 40 MM launcher and fired a total of two (2) rounds to quell the incident. LOONEY and REDMAN stopped fighting and assumed a prone position. Inadvertently, inmate CARTER (AN8931, FB3-108U), who was sitting between the B Observation Tower and the incident in close proximity to the incident directly in the line of fire, was struck in the forehead with one of the 40MM rounds. Medical evaluations were conducted and LOONEY, REDMAN, and CARTER were escorted to the B Facility Sally Port. REDMAN and CARTER were escorted to the Central Health Building (CHB) for further medical evaluation.

LOONEY and REDMAN will be charged with CCR Title 15 Section 3005 (d)(1) for the specific act of Fighting. Both inmates were returned

Due to the 40MM round inadvertently striking CARTER in the forehead, DFIT and OIG were notified with the submission of this report. OIA DFIT and OIG were notified at 1112 hours

Forced was used. An alarm was announced via institutional radio. No staff or inmates received any injuries during this incident. The emergency was announced via the institutional radio, and personal alarm. All appropriate Administrative Staff were notified by distribution of this report.

_R. Haynie_
STAFF SIGNATURE

**DATE:** 10/22/2020

**BADGE #:** 59438

**PERNR:** 4410

**NARRATIVE REVIEWED:** Yes

**REVIEWED BY STAFF:** Sampley, Walter

**REVIEWED DATE:** 10/22/2020

**REVIEWED TIME:** 10:16:23

CDCR

**INCIDENT REPORT PACKAGE**

**PAGE:** 26

**REPORT NO. IRTR161 - 12**

**INCIDENT LOG NUMBER: 000000000013712**

**PROCESSED:** 10/29/2020  06:04

**REQUESTOR:** L. Bales

## STAFF NARRATIVE

**STAFF NAME:** Sampley, W

**CREATED DATE:** 10/16/2020

**NARRATIVE TYPE:** Initial Report

**CREATED TIME:** 16:38:18

### NARRATIVE

On Friday, October 16, 2020, at approximately 0951 hours, while performing my duties as the B Program SGT I responded to a Code 1 alarm on the B Facility Yard in front of the Chapel. As I was responding to the incident, I heard the distinct sound of the 40mm Launcher being fired. I am unable to identified who shot, what their intended target was or from how far. When I arrived to the skirmish line, I observed two inmates later identified from their State Identification Cards as LOONEY (BC8292, FB3-209) on the ground in the prone position near the table and REDMAN (J82513, FB3-110) sitting next to the chapel wall. Cover Contact teams were established and Officer R. Masterson instructed LOONEY to stand to his feet and walk back to the skirmish line. LOONEY was secured in handcuffs and a clothed body search was conducted for contraband. No contraband was found. LOONEY was escorted to the B Facility pedestrian sally port and a medical assessment was completed.

REDMAN stood up and began walking around picking up canteen. Multiple direct orders were given to REDMAN to prone out, REDMAN refused. I instructed the Skirmish line to move forward, while continuing to give REDMAN direct orders to prone out, REDMAN complied and prone out. Officer D. Ceja secured REDMAN in handcuffs and conducted a clothed body search. No contraband was located.

I was informed that CARTER (AN8931) had been inadvertently struck by the 40mm round in the head. I instructed Officer R. Hart to place CARTER in handcuffs and escort him to the B Facility Pedestrian Sally port for a medical assessment. Once the Medical assessment was completed Officer Hart was instructed to escort him to the Central Health Building 56 TTA for further medical evaluation. Once medically cleared in the Central Health Building CARTER returned to his assigned cell. This concludes my involvement in this incident.

W. Sampley Jr

STAFF SIGNATURE

**DATE:** 10/16/2020

**BADGE #:**

**PERNR:**

**NARRATIVE REVIEWED:** Yes

**REVIEWED DATE:** 10/16/2020

**REVIEWED BY STAFF:** Munguia, M

**REVIEWED TIME:** 16:56:35

---

**STAFF NAME:** Madrigal, Z

**CREATED DATE:** 10/18/2020

**NARRATIVE TYPE:** Initial Report

**CREATED TIME:** 11:36:14

### NARRATIVE

On Sunday, October 18, 2020, while performing my duties as B Program SGT 2, at approximately 1037 hours, I was the camera operator when conducting a Use of Force interview with inmate CARTER (AN8931); SGT A. Earles conducted the interview. CARTER is alleging excessive/unnecessary force during an incident on the B Facility Main Yard. I recorded the interview in its entirety and transferred it to a Digital Video Disc (DVD). I then placed the disc in an evidence envelope and stored it in B Facility Control, Evidence Locker #8. This concludes my involvement in this incident.

Z. Madrigal

STAFF SIGNATURE

**DATE:** 10/18/2020

**BADGE #:**

**PERNR:**

**NARRATIVE REVIEWED:** Yes

**REVIEWED DATE:** 10/18/2020

**REVIEWED BY STAFF:** Earles, A

**REVIEWED TIME:** 13:52:34

STATE OF CALIFORNIA

**MEDICAL REPORT OF INJURY**
**OR UNUSUAL OCCURRENCE**

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 2

CDCR 7219 (Rev. 01/18)

| NAME OF INSTITUTION CSP SAC | LOCATION OF EVALUATION B Sally Port | | DATE 10/16/20 |
|---|---|---|---|

REASON FOR REPORT ☐ ALLEGATION ☐ ON THE JOB INJURY ☐ USE OF FORCE ☐ INJURY ☐ OTM RETURNS
☑ UNUSUAL OCCURRENCE ☐ PRE AD/SEG ADMISSION ☐ R&R ☐ OTHER

| NAME LAST Carter | FIRST Nathaniel | CDCR NUMBER AN8931 | PERNR / INST. ID # | VISITOR ID # (SOMS) |
|---|---|---|---|---|

| PLACE OF OCCURRENCE B main yard | DATE OF OCCURRENCE 10/16/20 | TIME OF OCCURRENCE 0951 | TIME SEEN 1004 | RN NOTIFIED TIME RN Peters 1006 | PHYSICIAN NOTIFIED TIME N/A |
|---|---|---|---|---|---|

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

"The Officer hit me point blank"

| INJURIES FOUND? YES / NO | | |
|---|---|---|
| Abrasion/Scratch | 1 | |
| Active Bleeding | 2 | |
| Broken Bone | 3 | |
| Bruise/Discolored Area | 4 | |
| Burn | 5 | |
| Dislocation | 6 | |
| Dried Blood | 7 | |
| Fresh Tattoo | 8 | |
| Cut/Laceration/Slash | 9 | |
| Swollen Area | 10 | |
| Pain | 11 | 10/10 |
| Protrusion | 12 | |
| Puncture | 13 | |
| Reddened Area | 14 | |
| Skin Flap | 15 | |
| Pre-Existing | 16 | |
| Other | 17 | |
| | 18 | |

Chemical Agent Exposure? YES / NO
Chem. Agent Exposure Area EX
Decontaminated w/ Water? YES / NO / REFUSED
Decontaminated w/ Air? YES / NO / REFUSED
Self-decontamination instructions given ? YES / NO
Staff issued Exposure packet ? YES / NO

Q 15 min. check times

| Initial | 1st Check |
|---|---|
| 2nd Check | Final |

TIME/DISPOSITION RTC 1007

Right

Left

Front

egg shaped bump

pain 10/10

Back

| REPORT COMPLETED BY/TITLE (PRINT AND SIGN) J. Gomez | | PERNR / INST. ID # | RDOs | ASSIGNMENT AREA EOP B |
|---|---|---|---|---|

**CDCR**
**REPORT NO. IRTR161 - 12**

**INCIDENT REPORT PACKAGE**

**INCIDENT LOG NUMBER: 000000000013712**

**PAGE:**   40
**PROCESSED:** 10/29/2020  06:04
**REQUESTOR:** L. Bales

**ELECTRONIC DOCUMENT**

**DOCUMENT TYPE:** Medical Report of Injury or Unusual Occurrence
**TITLE:** CARTER UOF INTERVIEW 7219
**PREPARED BY STAFF MEMBER INVOLVED:** A. Earles
**PAGE NUMBER:**   1

**(If document file type is supported, document will start on the next page)**



CALIFORNIA DEPARTMENT *of*
**Corrections and Rehabilitation**

# CLAIMANT APPEAL CLAIMS DECISION RESPONSE

**Re:** Appeal Claims Decision Response

**Offender Name:** CARTER, NATHANIEL JAMES

**CDC#:** AN8931

**Current Location:** SAC-Facility B

**Date:** 01/16/2021

**Current Area/Bed:** B 003 1 - 010001L

**Log #:** 000000051436

**Claim # 001**

**Institution/Parole Region of Origin:** California State Prison, Sacramento     **Facility/Parole District of Origin:** SAC-Facility B

**Housing Area/Parole Unit of Origin:** B 003 1

**Category:** Offender Safety and Security          **Sub-Category:** Use of Force

The California Department of Corrections and Rehabilitation (CDCR) Office of Appeals received this claim on 11/16/2020.

California Code of Regulations, title 15, provides the Office of Appeals 60 calendar days to complete a response. Due to the expiration of time, this response by the Office of Appeals will be the only response.

You do not need to resubmit this claim to the Office of Grievances or to the CDCR Office of Appeals.

**Decision: Time Expired**

State of California                                                  Department of Corrections and Rehabilitation
                                                                    Office of Appeals

# Memorandum



To:        Claimant

Subject:   **TIME-EXPIRED RESPONSE FROM THE OFFICE OF APPEALS**

Thank you for submitting your appeal for review by the California Department of
Corrections, Office of Appeals. Pursuant to Title 15, section 3486(i)(10), if the Office
of Appeals is not able to respond to a claim in 60 calendar days, as in this case, then
the claim must be answered "time-expired." As a result, the answer provided by the
Office of Grievances remains unchanged and this appeal is now closed. No further
action will be taken by the Department and no appeal of this action is permitted under
the regulations.

Also, pursuant to Title 15, section 3485(e), "The appeal package submitted by the
claimant shall be stored electronically by the Department. The CDCR Form 602-2 shall
contain a notification to the claimant that the documents submitted will not be returned
to the claimant." Therefore, your Form 602-2 and any supporting documents are not
included with this response.

However, a copy of your entire appeal package is maintained in your Central File. The
process for requesting copies of documents contained in Central Files, often referred
to as an *Olsen* review, can be found in the Department Operations Manual, sections
13030.16 and 13030.17.

Thank you,

HOWARD E. MOSELEY
Associate Director

# UNITED STATES DISTRICT COURT

Eastern District Court of California

Keith Holland, Clerk

Jenna Nelson, Chief Deputy

### CLERK'S NOTICE

☐ **REPLY TO:**
Divisional Office
2500 Tulare St. #1-500
Fresno, California 93721

☒ **REPLY TO:**
Office of the Clerk
501 I Street #4-200
Sacramento, CA 95814

TO:
Nathanael Carter #AN-8931
CSP- Sacramento
P.O. Box 290066
Represa, CA 95671

Case Number:  | n/a

RE:   Pleadings and/or Correspondence received on :   | 12/27/2021

☒   **E-FILING** : Pursuant to Standing Order of the Chief District Judge entitled "In Re: Procedural Rules for Electronic Submission of Prisoner Litigation filed by Plaintiffs Incarcerated", the document(s) can not be filed because your institution participates in the e-filing program with the court. Per the Standing Order, the document(s) is (are) returned unfiled and must be filed under E-Filing procedure with the Librarian/Litigation Coordinator. When filing documents under E-Filing procedures, please include this document (Clerk's Notice) with the e-filing documents.

Thank you for your future attention to this matter.

| ER | | 12/29/2021 |
|---|---|---|
| Deputy Clerk | | Date |